FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

JUL 18 2022

at 2 o'clock and 20 min. P M
CLERK, U.S. District Court

CLARE E. CONNORS #7936
United States Attorney
District of Hawaii

MICHAEL NAMMAR
Deputy Chief, Criminal Division

MOHAMMAD KHATIB
Assistant U.S. Attorney
Room 6100, PJKK Federal Building
300 Ala Moana Blvd.
Honolulu, Hawaii 96850
Telephone:  (808) 541-2850
Facsimile:  (808) 541-2958
Email:      Mohammad.Khatib@usdoj.gov

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 22-00055 JAO |
| | ) | |
| Plaintiff, | ) | MEMORANDUM OF PLEA |
| | ) | AGREEMENT |
| vs. | ) | |
| | ) | DATE: July 18, 2022 |
| ALAN SCOTT RUDO, | ) | TIME: 1:30 p.m. |
| | ) | JUDGE: Hon. Rom A. Trader |
| Defendant. | ) | |
| | ) | |
| | ) | |

**MEMORANDUM OF PLEA AGREEMENT**

Pursuant to Rule 11 of the Federal Rules of Criminal Procedure, the

UNITED STATES OF AMERICA, by its attorney, the United States Attorney for

the District of Hawaii, and the defendant, ALAN SCOTT RUDO, and his attorney,

Gary Gurmail Singh, Esq., have agreed upon the following:

## THE CHARGES

1.     The defendant acknowledges that he has been charged in an

Information with violating Title 18, United States Code, Section 1349.

2.     The defendant has read the charge against him contained in the

Information, and that charge has been fully explained to him by his attorney.

3.     The defendant fully understands the nature and elements of the crime

with which he has been charged.

## THE AGREEMENT

4.     The defendant agrees to waive indictment and enter a voluntary plea

of guilty to the Information, which charges him with conspiracy to commit honest

services wire fraud.   The defendant is aware that he has the right to have this

felony asserted against him by way of grand jury indictment.   The defendant

hereby waives this right and consents that this offense may be charged against him

by way of the Information.   In return, the government agrees not to file other

charges against the defendant related to the conspiracy to which the defendant is

pleading guilty, including but not limited to other fraud and money laundering

charges.

2

5.     The defendant agrees that this Memorandum of Plea Agreement shall be filed and become part of the record in this case.

6.     The defendant enters this plea because he is in fact guilty of conspiracy to commit honest services wire fraud as charged in the Information, and he agrees that this plea is voluntary and not the result of force or threats.

## PENALTIES

7.     The defendant understands that the penalties for the offense to which he is pleading guilty include:

a.     A term of imprisonment of up to 20 years and a fine of up to $250,000, plus a term of supervised release up to 3 years.

b.     In addition, the Court must impose a $100 special assessment as to each count to which the defendant is pleading guilty.  The defendant agrees to pay $100 for each count to which he is pleading guilty to the District Court's Clerk's Office, to be credited to said special assessments, before the commencement of any portion of sentencing.  The defendant acknowledges that failure to make such full advance payment in a form and manner acceptable to the prosecution will allow, though not require, the prosecution to withdraw from this Agreement at its option.

      c.      **Forfeiture.**  Pursuant to 18 U.S.C. § 981(a)(1)(C) & 28 U.S.C. § 2461, forfeiture of any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of a specified unlawful activity within the meaning of 18 U.S.C. § 1956(c)(7) or a conspiracy to commit such offense.

      d.      **Restitution.**  The Court must also award restitution pursuant to Title 18, United States Code, Section 3663A, to the persons and entities victimized by the defendant's offenses.   The defendant understands that the Court will determine the amounts of restitution to be ordered, as well as the persons and entities entitled to such restitution, with the assistance of the United States Probation Office.   The defendant agrees to pay restitution for all losses caused by the defendant's conduct, regardless of whether the government has agreed to refrain from charging additional counts associated with such losses as part of this Agreement.

## FACTUAL STIPULATIONS

8.     The defendant admits the following facts and agrees that they are not a detailed recitation, but merely an outline of what happened in relation to the charge to which the defendant is pleading guilty:

4

## Introduction

a.     The lack of affordable housing is a significant challenge facing many residents of Hawaii, including those of Hawaii County.   To address this problem, the County enacted an affordable housing policy requiring "residential developers to include affordable housing in their projects or contribute to affordable housing off-site."   Hawaii County Code, Ch. 11, Art. 1, Sec. 11-2(6).

b.     The Office of Housing and Community Development ("OHCD") oversees and implements the objectives of the County's affordable housing policy.   Through the OHCD, the County enters into affordable housing agreements ("AHA") with developers.   AHAs are signed by the County Housing Administrator, Corporation Counsel, and Mayor on the one hand, and developers on the other.

c.     Developers who agree to construct new affordable housing units in excess of any requirements imposed under Chapter 11 may earn "excess credits," known as affordable housing credits ("AHC").   AHCs can be transferred to other developers, subject to County approval.   Those developers can use the AHCs to satisfy existing or future affordable housing requirements.

d.     From September 2006 through December 2018, Alan Scott Rudo, the defendant, was a Housing and Community Development Specialist at the

5

OHCD. Rudo's official duties included, among other things, ensuring affordable housing requirements were met under Chapter 11 and assisting developers with the County's affordable housing policy.

e.     The conduct of County employees is governed by a code of ethics that prohibits certain conduct, including Hawaii County Code, Chp. 2, Art. 15, Sec. 2-79. County employees are not allowed to use or attempt to use their official position to secure or grant unwarranted privileges, exemptions, advantages, contracts, or treatment, for themselves or others. Such prohibited conduct includes but is not limited to: (i) accepting, receiving, or soliciting compensation or other consideration for the performance of the officer's or employee's official duties or responsibilities except as provided by law; and (ii) using County property, facilities, equipment, time, or personnel for private business or for any purpose other than for a public purpose. Hawaii County Code, Chp. 2, Art. 15, Sec. 2-83.

f.     County employees are not allowed to acquire financial interests in any business or other undertaking which they have reason to believe may be directly involved in official action to be taken by them. Similarly, County employees are not allowed to take any official action directly affecting: (i) a business or other undertaking in which they have a substantial financial interest;

6

and (ii) a private undertaking in which they are engaged as a consultant. *See* Hawaii County Code, Chp. 2, Art. 15, Sec. 2-84.

## The Conspiracy

g.      From at least December 2014 and continuing through October 2021, Rudo engaged in a conspiracy with others to deprive the County of Hawaii and its Office of Housing and Community Development of their right of honest services.   The conspirators devised a scheme to abuse the County's affordable housing policy, steal public benefits intended for low-income residents and thereby line their own pockets.   The scheme was lucrative and through it, the conspirators fraudulently obtained at least $10,980,000 worth of land and AHCs.

h.      To execute the scheme, the conspirators used Rudo's official position as a Housing and Community Development Specialist at the OHCD to ensure County approval of three AHAs containing extraordinarily favorable terms. Rudo and his co-conspirators obtained these approvals by making material misrepresentations and omitting material facts.   Specifically, the conspirators: (i) misled the County into believing that they would build affordable housing as promised in the AHAs; (ii) falsely claimed that one of their businesses, Company-C, was a non-profit; and (iii) concealed Rudo's substantial financial interest in the

7

approval of the AHAs and the bribes and kickbacks he received and attempted to receive from them.

i.      In fact, the conspirators never built a single unit of affordable housing.   Instead, they converted public benefits into personal wealth derived from sales of AHCs and land.   Further, Company-C was and always had been a for-profit company.   And Rudo stood to gain substantial sums from the approval of the AHAs.   In exchange for officials acts, Rudo took and attempted to take bribes and kickbacks from his co-conspirators worth at least $1,817,716.

j.      The conspirators executed their honest services wire fraud scheme in the following ways, among others.

### Company-C and the Waikoloa Scheme

k.      In the Waikoloa scheme, Rudo's co-conspirators formed Company-C as a for profit limited liability corporation, in which Rudo had an ownership interest.   Rudo's co-conspirators created two trusts and a shell corporation to conceal Rudo's ownership interest in Company-C.

l.      In December 2016, a real estate development company ("Development Company-1") entered into an AHA ("AHA-1") with the County that allowed Development Company-1 to satisfy a preexisting affordable housing requirement.   In exchange, Development Company-1 agreed to donate over 11.8

8

acres of land in Waikoloa, Hawaii ("the Waikoloa property") to Company-C. Under Chapter 11 of the County Code, the donation specifically had to be to a non-profit for Development Company-1 to satisfy its affordable housing requirement with the County.   AHA-1 described Company-C as "a Hawaii non-profit corporation."   Rudo ensured that the OHCD and the County approved AHA-1.

m.     In January 2018, a warranty deed was recorded with the State of Hawaii conveying the Waikoloa property from Development Company-1 to Company-C.

n.     Rudo knew that Company-C never had the ability to build affordable housing on the Waikoloa property.   In May 2018, Company-C sold the Waikoloa property for $1,500,000.   The proceeds of that sale were laundered through a 1031 tax deferred exchange.   From the proceeds of the Waikoloa scheme, Rudo received bribes or kickbacks of at least $1,010,934 in exchange for official acts.

o.     Rudo and his co-conspirators concealed from the County Company-C's for-profit status, Rudo's ownership interest in the company, and the bribery or kickback payments Rudo received from the company.

9

p.      Rudo and his co-conspirators used interstate email communications and caused interstate wire payments to be made to execute the Waikoloa scheme.

**Company-D and the Kailua-Kona Scheme**

q.      In the Kailua-Kona scheme, Rudo's co-conspirators formed Company-D.   In September 2015, Company-D agreed to purchase approximately 13 acres of land known as Lot 16-A, Lot 16-B, and Lot 16-C of the Kealakehe Homesteads in Kailua-Kona ("the Kailua-Kona Property") in exchange for a nominal amount of money and 46 AHCs that Company-D did not have.

r.      In November 2015, Company-D entered into an AHA ("AHA-2") with the County, in which it committed to developing 52 affordable housing units on the Kailua-Kona property.   In exchange, AHA-2 granted 104 AHCs to Company-D and included extraordinarily favorable terms.   It permitted 46 of the 104 AHCs to be assigned to third parties as consideration for the value of the Kailua-Kona property.   AHA-2 also allowed an additional 9 AHCs to be used to satisfy an initial phase of affordable housing construction.   Rudo ensured that the OHCD and the County approved AHA-2.

s.      On December 17, 2015, Company-D closed on the purchase of the Kailua-Kona property.   Rudo ensured that the County and the OHCD

10

approved an accommodation releasing a portion of the Kailua-Kona property from "any and all obligations" for affordable housing.

t.      Company-D paid $14,076 and assigned 46 AHCs to fund the purchase of the Kailua-Kona property.   Of the money used to fund the purchase, $13,076 came from a bank account in the name of Company-E.

u.      Rudo knew that Company-D never had the ability to build affordable housing on the Kailua-Kona property.   Instead, it planned to sell the property and the remaining AHCs from AHA-2 to generate substantial sums of money.

v.      In May 2016, Company-D assigned 4 AHCs to Company-E, which Company-E sold.

w.      In January 2019 and April 2021, Company-D received a total of $60,000 from a developer as payment for 2 AHCs.

x.      In July 2020, Company-D rented a 6-acre portion (Lot 16-B, and Lot 16-C of the Kealakehe Homesteads) of the Kailua-Kona property for approximately $7,000 a month.

y.      On June 4, 2021, Company-D sold a 7-acre portion (Lot 16-A of the Kealakehe Homesteads) of the Kailua-Kona property to a developer for

11

$950,000, however the net proceeds of the sale, totaling $938,438.16, were seized by the United States.

z.    In total, Company-D generated at least $1,033,427 in proceeds from the Kailua-Kona scheme. From that amount, Rudo received and attempted to receive bribes or kickbacks of approximately $469,485 in exchange for official acts.

aa.    Rudo and his co-conspirators concealed from the County Rudo's personal financial interest in Company-D business and the bribery or kickback payments he received and attempted to receive from the company.

bb.    Rudo and his co-conspirators used interstate email communications and caused interstate wire payments to be made to execute the Kailua-Kona scheme.

### Company-E and the South Kohala Scheme

cc.    In the South Kohala scheme, Rudo's co-conspirators formed Company-E. Company-E entered into an AHA ("AHA-3") with the County, in which it committed to developing 106 affordable housing units on land in South Kohala, Hawaii ("the South Kohala property") that it did not own. In exchange, AHA-3 granted 212 AHCs to Company-E. Rudo ensured that the OHCD and the County approved AHA-3.

12

dd.     Rudo knew that Company-E never had the ability to build affordable housing.   Instead, Company-E manipulated the County's affordable housing policy and orchestrated the purchase and sale of the South Kohala property on the same day.   On April 24, 2015, Company-E sold the South Kohala property to one developer ("Development Company-2") in exchange for $1,012,133.   Company-E then used $1,000,000 of those funds and transferred 30 AHCs from AHA-3 to another developer ("Development Company-3") to purchase the South Kohala property.   Rudo assisted Company-E's acquisition of the South Kohala property from Development Company-3 and its sale to Development Company-2.   Company-E retained 17 AHCs from AHA-3 and extracted a $45,000 fee from Development Company-2 without building any affordable housing.

ee.     Rudo used knowledge and expertise gained from his official position at the OHCD to assist Company-E with the sale of these 17 AHCs to other developers.   The sales generated substantial sums of money.   Four credits were sold for $200,000.   Five credits were sold for $150,000.   The remaining eight credits plus an additional four credits (that Company-E received from Company-D, as described above) were sold for $384,000.

13

ff.     In total, Company-E generated $759,000 in proceeds from the South Kohala scheme.   From that amount, Rudo received bribes or kickbacks of $337,297 in exchange for official acts.

gg.     Rudo and his co-conspirators concealed from the County Rudo's personal financial interest in Company-E business and the bribery or kickback payments he received from the company.

hh.     Rudo and his co-conspirators used interstate email communications to execute the South Kohala scheme.

9.     Pursuant to CrimLR 32.1(a) of the Local Rules of the United States District Court for the District of Hawaii, the parties agree that the charge to which the defendant is pleading guilty adequately reflects the seriousness of the actual offense behavior and that accepting this Agreement will not undermine the statutory purposes of sentencing.

## SENTENCING STIPULATIONS

10.     Pursuant to CrimLR 32.1(b) of the Local Rules of the United States District Court for the District of Hawaii and Section 6B1.4 of the Sentencing Guidelines, the parties stipulate to the following for the purpose of the sentencing of the defendant in connection with this matter:

14

a.   The parties agree that for purposes of determining, under United States Sentencing Guideline, Sections 2C1.1(b)(2) and 2B1.1(b)(1), the value of anything obtained or to be obtained by the defendant as a public official, or others acting with the defendant as a public official from the offense charged in the Information was greater than $1,500,000, but less than $3,500,000.

b.   As of the date of this agreement, it is expected that the defendant will enter a plea of guilty prior to the commencement of trial, will truthfully admit his involvement in the offense and related conduct, and will not engage in conduct that is inconsistent with such acceptance of responsibility.   If all of these events occur, and the defendant's acceptance of responsibility continues through the date of sentencing, a downward adjustment of 2 levels for acceptance of responsibility will be appropriate.   *See* U.S.S.G. § 3E1.1(a) and Application Note 3.

c.   The United States Attorney agrees that the defendant's agreement herein to enter into a guilty plea constitutes notice of intent to plead guilty in a timely manner, so as to permit the government to avoid preparing for trial as to the defendant.   Accordingly, the United States Attorney anticipates moving in the Government's Sentencing Statement for a one-level reduction in sentencing offense level pursuant to Guideline § 3E1.1(b), if the defendant is

15

otherwise eligible.   The defendant understands that notwithstanding its present intentions, and still within the Agreement, the prosecution reserves the rights (1) to argue to the contrary in the event of receipt of new information relating to those issues, and (2) to call and examine witnesses on those issues in the event that either the United States Probation Office finds to the contrary of the prosecution's intentions or the Court requests that evidence be presented on those issues.

11.    The parties agree that notwithstanding the parties' Agreement herein, the Court is not bound by any stipulation entered into by the parties but may, with the aid of the presentence report, determine the facts relevant to sentencing.   The parties understand that the Court's rejection of any stipulation between the parties does not constitute a refusal to accept this Agreement since the Court is expressly not bound by stipulations between the parties.

12.    The parties represent that as of the date of this agreement there are no material facts in dispute.

### APPEAL/COLLATERAL REVIEW

13.    The defendant is aware that he has the right to appeal his conviction and the sentence imposed.   The defendant knowingly and voluntarily waives the right to appeal, except as indicated in subparagraph "b" below, his conviction and any sentence within the Guidelines range as determined by the Court at the time of

16

sentencing, and any lawful restitution or forfeiture order imposed, or the manner in which the sentence, restitution, or forfeiture order was determined, on any ground whatsoever, in exchange for the concessions made by the prosecution in this Agreement. The defendant understands that this waiver includes the right to assert any and all legally waivable claims.

a. The defendant also waives the right to challenge his conviction or sentence or the manner in which it was determined in any collateral attack, including, but not limited to, a motion brought under Title 28, United States Code, Section 2255, except that the defendant may make such a challenge (1) as indicated in subparagraph "b" below, or (2) based on a claim of ineffective assistance of counsel.

b. If the Court imposes a sentence greater than specified in the guideline range determined by the Court to be applicable to the defendant, the defendant retains the right to appeal the portion of his sentence greater than specified in that guideline range and the manner in which that portion was determined and to challenge that portion of his sentence in a collateral attack.

c. The prosecution retains its right to appeal the sentence and the manner in which it was determined on any of the grounds stated in Title 18, United States Code, Section 3742(b).

## FINANCIAL DISCLOSURE

14.     In connection with the collection of restitution or other financial obligations, including forfeiture as set forth below, that may be imposed upon him, the defendant agrees as follows:

a.     The defendant agrees to fully disclose all assets in which he has any interest or over which he exercises control, directly or indirectly, including any assets held by a spouse, nominee, or third party.   The defendant understands that the United States Probation Office (USPO) will conduct a presentence investigation that will require the defendant to complete a comprehensive financial statement.   To avoid the requirement of the defendant completing financial statements for both the USPO and the government, the defendant agrees to truthfully complete a financial statement provided to the defendant by the United States Attorney's Office.   The defendant agrees to complete the disclosure statement and provide it to the USPO within the time frame required by the United States Probation officer assigned to the defendant's case.   The defendant understands that the USPO will in turn provide a copy of the completed financial statement to the United States Attorney's Office.   The defendant agrees to provide written updates to both the USPO and the United States Attorney's Office regarding any material changes in circumstances, which occur prior to sentencing,

18

within seven days of the event giving rise to the changed circumstances. The defendant's failure to timely and accurately complete and sign the financial statement, and any written update thereto, may, in addition to any other penalty or remedy, constitute the defendant's failure to accept responsibility under U.S.S.G § 3E1.1.

b.     The defendant expressly authorizes the United States Attorney's Office to obtain his credit report. The defendant agrees to provide waivers, consents, or releases requested by the United States Attorney's Office to access records to verify the financial information, such releases to be valid for a period extending 90 days after the date of sentencing. The defendant also authorizes the United States Attorney's Office to inspect and copy all financial documents and information held by the USPO.

c.     Prior to sentencing, the defendant agrees to notify the Financial Litigation Unit of the U.S. Attorney's Office before making any transfer of an interest in property with a value exceeding $1,000 owned directly or indirectly, individually or jointly, by the defendant, including any interest held or owned under any name, including trusts, partnerships, and corporations.

## **FORFEITURE**

15.     As part of his acceptance of responsibility and pursuant to 18 U.S.C. § 981(a)(1)(C) & 28 U.S.C. § 2461, the defendant agrees as follows:

a.      (1) The defendant consents to the entry of a forfeiture money judgment in the amount of $2,114,170 in United States currency (the "Forfeiture Money Judgment") and (2) the defendant will forfeit all of his right, title, and interest in the following property (the "Specific Property"):

i.      Proceeds in the amount of $938,428.16 from the sale of the real property located at 74-5001 Kiwi Street, Kailua-Kona, Hawaii and designated as Tax Map Key No. (3) 7-4-004-091, which was seized by the United States on June 4, 2021;

ii.     Proceeds in the amount of $752,064.46 from the sale of the real property located at 4426 SE 16th Place, Cape Coral, Florida, which was received by the United States on November 9, 2021;

iii.    Proceeds in the amount of $499,626.34 from the sale of the real property located at 32-1077 Hawaii Belt Road, Ninole, Hawaii, and designated as Tax Map Key (3) 3-2-003-024, which was seized by the United States on January 6, 2022;

iv.    Proceeds in the amount of $133,771.33 from the sale of the real property located at 15-2697 Maiko Street, Pahoa, Hawaii, which was received by the United States on January 31, 2022

v.    Forty-five affordable housing credits issued by the County of Hawaii, which was seized by the United States on April 4, 2022;

vi.    That certain real property known as Lot 16 – B of the Kealakehe Homesteads, being a portion of Grant 6273 to A. Napuupahee, titled in the name of West View Developments, LLC, and designated as Tax Map Key Number (3) 7-4-004-092, together with all appurtenances and improvements; and

vii.    That certain real property known as Lot 16 – C of the Kealakehe Homesteads, being a portion of Grant 6273 to A. Napuupahee, titled in the name of West View Developments, LLC, and designated as Tax Map Key Number (3) 7-4-004-014, together with all appurtenances and improvements.

b.    The defendant acknowledges that the Forfeiture Money Judgment and the Specific Property are subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) & 28 U.S.C. § 2461 as property, real or personal, which constitutes or is derived from proceeds traceable to a violation of a specified unlawful activity within the meaning of 18 U.S.C. § 1956(c)(7) or a conspiracy to commit such offense.

c.     The defendant knowingly and voluntarily waives and agrees to waive any and all constitutional, statutory, and other challenges to the forfeiture on any and all grounds, including that the forfeiture constitutes an excessive fine or punishment under the Eighth Amendment.   The defendant waives all constitutional, legal, and equitable defenses to the entry of and collection of the Forfeiture Money Judgment.   The defendant knowingly and voluntarily waives any right to a jury trial on the forfeiture of property.

d.     The defendant agrees to consent promptly upon request to the entry of any orders deemed necessary by the government or the Court to complete the forfeiture and disposition of the property.   The defendant waives the requirements of Rules 32.2 and 43(a) of the Federal Rules of Criminal Procedure regarding notice of forfeiture in the charging instrument, announcement of forfeiture at sentencing, and incorporation of the forfeiture in the judgment.   The defendant acknowledges that he understands that the forfeiture of the property, if the government elects to conduct the forfeiture criminally, will be part of the sentence imposed upon the defendant in this case and waives any failure by the Court to advise the defendant of this, pursuant to Rule 11(b)(1)(J) of the Federal Rules of Criminal Procedure, during the change of plea hearing.   Pursuant to Rule 32.2(b)(4) of the Federal Rules of Criminal Procedure, the defendant consents to

22

the preliminary order of forfeiture for the Specific Property and the Forfeiture Money Judgment becoming final as to the defendant when entered.

e.     The defendant agrees to waive all interest in the Specific Property in any administrative or judicial forfeiture proceeding, whether criminal or civil, state or federal, and to withdraw any claim that the defendant may have filed in such a proceeding.   The defendant further waives any other notice requirement that may apply to the administrative and/or civil forfeiture of the Specific Property.

f.     Any forfeited money and the net proceeds from the sale of the Specific Property will be applied to the Money Judgment in partial satisfaction thereof.   The defendant understands, however, that the forfeiture of the forfeitable property does not constitute and will not be treated as satisfaction, in whole or in part, of any fine, restitution, reimbursement of cost of imprisonment, or any other monetary penalty this Court may impose upon the defendant in addition to the forfeiture.

g.     The defendant represents and agrees that, within the meaning of 21 U.S.C. § 853(p), the Forfeiture Money Judgment amount, $2,114,170, represents property subject to forfeiture that, as a result of any act or omission of the defendant,

23

(A) cannot be located upon the exercise of due diligence;

(B) has been transferred or sold to, or deposited with, a third party;

(C) has been placed beyond the jurisdiction of the court;

(D) has been substantially diminished in value; or

(E) has been commingled with other property which cannot be divided without difficulty.

h.      Payment of the Forfeiture Money Judgment shall be made by postal money order, bank check, or certified check payable to the United States Marshals Service.   On or before the date he enters his plea of guilty pursuant to this agreement, the defendant shall cause said check to be hand-delivered to the Asset Forfeiture Unit, United States Attorney's Office, District of Hawaii, PJKK Federal Building, 300 Ala Moana Boulevard, Room 6-100, Honolulu, Hawaii 96850, with the criminal docket number noted on the face of the check.

i.      If the Forfeiture Money Judgment is not paid on or before the date the defendant enters his plea of guilty pursuant to this agreement, interest shall accrue at the judgment rate of interest (as defined by 28 U.S.C. § 1961) on any unpaid portion thereof at the judgment rate of interest from that date. Furthermore, if the defendant fails to pay any portion of the Forfeiture Money Judgment on or before the date of his guilty plea, the defendant consents to the forfeiture of any other property alleged to be subject to forfeiture in the

24

Information, including substitute assets, in full or partial satisfaction of the money judgment, and remains responsible for the payment of any deficiency until the Forfeiture Money Judgment, including any accrued interest, is paid in full.

## IMPOSITION OF SENTENCE

16. The defendant understands that the District Court in imposing sentence will consider the provisions of the Sentencing Guidelines. The defendant agrees that there is no promise or guarantee of the applicability or non-applicability of any Guideline or any portion thereof, notwithstanding any representations or predictions from any source.

17. The defendant understands that this Agreement will not be accepted or rejected by the Court until there has been an opportunity by the Court to consider a presentence report, unless the Court decides that a presentence report is unnecessary. The defendant understands that the Court will not accept an agreement unless the Court determines that the remaining charge adequately reflects the seriousness of the actual offense behavior and accepting the Agreement will not undermine the statutory purposes of sentencing.

## WAIVER OF TRIAL RIGHTS

18. The defendant understands that by pleading guilty he surrenders certain rights, including the following:

25

a.      If the defendant persisted in a plea of not guilty to the charges against him, then he would have the right to a public and speedy trial.   The trial could be either a jury trial or a trial by a judge sitting without a jury.   The defendant has a right to a jury trial.   However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the prosecution, and the judge all must agree that the trial be conducted by the judge without a jury.

b.      If the trial is a jury trial, the jury would be composed of twelve laypersons selected at random.   The defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising peremptory challenges.   The jury would have to agree unanimously before it could return a verdict of either guilty or not guilty.   The jury would be instructed that the defendant is presumed innocent, and that it could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt.

c.      If the trial is held by a judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not he or she was persuaded of the defendant's guilt beyond a reasonable doubt.

d.      At a trial, whether by a jury or a judge, the prosecution would be required to present its witnesses and other evidence against the defendant.   The

26

defendant would be able to confront those prosecution witnesses and his attorney would be able to cross-examine them.   In turn, the defendant could present witnesses and other evidence on his own behalf.   If the witnesses for the defendant would not appear voluntarily, the defendant could require their attendance through the subpoena power of the Court.

e.   At a trial, the defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify.

19.   The defendant understands that by pleading guilty, he is waiving all of the rights set forth in the preceding paragraph.   The defendant's attorney has explained those rights to him, and the consequences of the waiver of those rights.

## USE OF PLEA STATEMENTS

20.   If, after signing this Agreement, the defendant decides not to plead guilty as provided herein, or if the defendant pleads guilty but subsequently makes a motion before the Court to withdraw his guilty plea and the Court grants that motion, the defendant agrees that any admission of guilt that he makes by signing this Agreement or that he makes while pleading guilty as set forth in this Agreement may be used against him in a subsequent trial if the defendant later proceeds to trial.   The defendant voluntarily, knowingly, and intelligently waives

27

any protection afforded by Rule 11(f) of the Federal Rules of Criminal Procedure and Rule 410 of the Federal Rules of Evidence regarding the use of statements made in this Agreement or during the course of pleading guilty when the guilty plea is later withdrawn. The *only* exception to this paragraph is where the defendant fully complies with this Agreement but the Court nonetheless rejects it. Under those circumstances, the United States may not use those statements of the defendant for any purpose.

21.     The defendant understands that the prosecution will apprise the Court and the United States Probation Office of the nature, scope and extent of the defendant's conduct regarding the charges against him, related matters, and any matters in aggravation or mitigation relevant to the issues involved in sentencing.

## COOPERATION

22.     The defendant agrees that he will fully cooperate with the United States.

a.     The defendant agrees to testify truthfully at any and all trials, hearings, or any other proceedings at which the prosecution requests him to testify, including, but not limited to, any grand jury proceedings, trial proceedings involving co-defendants and others charged later in the investigation, sentencing hearings, and related civil proceedings.

28

b.      The defendant agrees to be available to speak with law enforcement officials and representatives of the United States Attorney's Office at any time and to give truthful and complete answers at such meetings, but he understands he may have his counsel present at those conversations, if he so desires.

c.      The defendant agrees he will not assert any privilege to refuse to testify at any grand jury, trial, or other proceeding, involving or related to the crimes charged in this Information or any subsequent charges related to this investigation, at which the prosecution requests him to testify.

d.      The defendant agrees that his sentencing date may be delayed based on the government's need for the defendant's continued cooperation, and agrees not to object to any continuances of the defendant's sentencing date sought by the United States.

e.      Pursuant to Section 1B1.8(a) of the Sentencing Guidelines, the prosecution agrees that self-incriminating information provided pursuant to this Agreement to cooperate will not be used in determining the applicable guideline range, except as may be provided in this Agreement and under Section 1B1.8(b) of the Sentencing Guidelines.

29

23. In the event that the defendant does not breach any of the terms of this Agreement but the Court nonetheless refuses to accept the Agreement after the defendant has made statements to law enforcement authorities or representatives of the United States Attorney's Office pursuant to this Agreement, the prosecution agrees not to use said statements in its case-in-chief in the trial of the defendant in this matter. The defendant understands that this does not bar the use of information and evidence derived from said statements or prohibit the use of the statements by the prosecution in cross-examination or rebuttal.

24. Pursuant to Guidelines § 5K1.1 and Rule 35(b) of the Federal Rules of Criminal Procedure, the prosecution may move the Court to depart from the Guidelines on the ground that the defendant has provided substantial assistance to authorities in the investigation or prosecution of another person who has committed an offense. The defendant understands that:

a. The decision as to whether to make such a request or motion is entirely up to the prosecution.

b. This Agreement does not require the prosecution to make such a request or motion.

c.   This Agreement confers neither any right upon the defendant to have the prosecution make such a request or motion, nor any remedy to the defendant in the event the prosecution fails to make such a request or motion.

d.   Even in the event that the prosecution makes such a request or motion, the Court may refuse to depart from the Guidelines or to impose a sentence below the minimum level established by statute.

25.   The defendant and his attorney acknowledge that, apart from any written proffer agreements, if applicable, no threats, promises, agreements or conditions have been entered into by the parties other than those set forth in this Agreement, to induce the defendant to plead guilty.   Apart from any written proffer agreements, if applicable, this Agreement supersedes all prior promises, agreements or conditions between the parties.

26.   To become effective, this Agreement must be signed by all signatories listed below.

//

//

//

//

//

31

27.     Should the Court refuse to accept this Agreement, it is null and void and neither party shall be bound thereto.

AGREED:

CLARE E. CONNORS
United States Attorney
District of Hawaii


_____          Dated: _July 12, 2022_
MICHAEL NAMMAR
Deputy Chief, Criminal Division


_____          Dated: _July 12, 2022_
MOHAMMAD KHATIB
Assistant U.S. Attorney


_____          Dated: _6-22-2022_
ALAN SCOTT RUDO
Defendant


_____          Dated: _6/22/2022_
GARY GURMAIL SINGH
Attorney for Defendant

32